UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

---

| | |
|---|---|
| STEPHEN SIPES, JR. | CIVIL ACTION NO. 11-1668 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| CITY OF MONROE, ET AL | MAGISTRATE JUDGE HORNSBY |

---

## MEMORANDUM RULING

The Plaintiff, Stephen Sipes, Jr., filed this Section 1983 suit against the City of Monroe, Metro Narcotics Unit ("Metro Narcotics"), and Officer Triche Passman ("Passman"), asserting that he was falsely arrested and subjected to unlawful search and seizure and malicious prosecution. Currently before the Court is Metro Narcotics' Motion for Summary Judgment, which seeks a determination by the Court that it is not an entity capable of being sued, and therefore the claims against it must be dismissed. [Record Document 9]. Sipes opposes Metro Narcotics' motion. [Record Document 11]. After a thorough review of the record, the undisputed facts, and the applicable law, the Court concludes that Metro Narcotics is not a juridical entity capable of being sued. Accordingly, Metro Narcotics' motion for summary judgment [Record Document 9] shall be **GRANTED**.

**FACTUAL BACKGROUND**

Although the facts underlying this Section 1983 action are contested, the facts germane to the issue before the Court are primarily undisputed. In September of 2010, Sipes collected money from Monroe and Shreveport businesses, purportedly for advertising in <u>Louisiana Narcotics Officer</u> magazine. Sipes' complaint states that he was hired by Bill Fielder of Callan Publishing, the company responsible for publishing <u>Louisiana Narcotics Officer</u>. On September 15, 2010, Sipes attempted to pick up a check from the office of Dr. Karen L. Koehler, DDS in Monroe. Evidently, Metro Narcotics received a phone call from a local business reporting that a man named Mark Davis was claiming to be a member of Metro Narcotics and seeking donations and advertisements in law enforcement magazines.

Passman, an officer assigned to Metro Narcotics, confronted Sipes at Dr. Koehler's office, where he asked if Sipes was claiming to be Mark Davis. Sipes denied that; nevertheless, he was handcuffed, read his rights and taken outside of the office where the handcuffs were removed. A number of additional events occurred that same day, none of which is relevant to the motion before the Court. However, those events ultimately culminated in Sipes' arrest for impersonating an officer of Metro Narcotics. He was formally charged by a bill of information, although those charges were dismissed in November 2011. In September 2011,

Sipes filed suit against the City of Monroe, Metro Narcotics, and Passman, claiming false arrest, unlawful search and seizure, and malicious prosecution.

In April of 2012, Magistrate Judge Hornsby held a status conference with the parties, during which the issue of whether Metro Narcotics is a legal entity capable of being sued was raised. See Record Document 8. Magistrate Judge Hornsby allowed the parties three months to conduct discovery on this issue and set a deadline of thirty days thereafter for dispositive motions to be filed. The instant motion for summary judgment by Metro Narcotics is directly responsive to the Court's order.

## LAW AND ANALYSIS

I.  Motion for Summary Judgment.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A genuine issue of

material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "Factual disputes that are irrelevant or unnecessary will not be counted." Id.

Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S. Ct. at 2552. If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, Little, 37 F.3d at 1075, Wallace, 80 F.3d at 1047, all factual controversies must be resolved in favor of the nonmovant. See Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456

(5th Cir. 2005). However, a factual controversy only exists when "both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

II.   Metro Narcotics' Motion for Summary Judgment.

The question before the Court is whether Metro Narcotics is an entity capable of being sued. Pursuant to Federal Rule of Civil Procedure 17(b), an entity's capacity to sue or be sued is determined by the law of the state in which the court is located. F.R.C.P. 17(b); Darby v. Pasadena Police Dep't, 939 F.2d 311, 313 (5th Cir. 1991). As such, this Court will look to Louisiana law to determine whether Metro Narcotics is an entity capable of being sued. Louisiana Civil Procedure Article 24 provides:

> There are two kinds of persons: natural persons and juridical persons.
>
> A natural person is a human being. A juridical person is an entity to which the law attributes personality, such as a corporation or a

partnership. The personality of a juridical person is distinct from that of its members.

"Juridical persons . . . are creatures of the law." Brown v. State Farm Fire & Cas. Co., 2000-0539 (La. App. 1 Cir. 6/22/01), 804 So. 2d 41, 44. The law grants them "the power to participate in legal life by the attribution of legal personality." Id. (citing Prof. A.N. Yiannopoulos, Louisiana Civil Law System § 48 (1977)). A juridical person "has no more legal capacity than the law allows." Id. at 45.

This Court has been unable to locate any jurisprudence directly determining whether Metro Narcotics is a juridical person that can sue or be sued. However, in Roberts v. Sewerage and Water Bd. of New Orleans, 634 So. 2d 341 (La. 1994), the Louisiana Supreme Court set forth the analysis to determine whether an entity is a juridical person capable of being sued. There, the court instructed:

> The important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an *additional and separate government unit* for the particular purpose at issue. *In the absence of positive law to the contrary,* a local government unit *may* be deemed to be a juridical person separate and distinct from other government entities, *when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity*.
> . . .
> Such a determination will depend on an analysis of specifically what the entity is legally empowered to do.

Id. at 346-47 (emphasis added). The Roberts court focused on the Sewerage and Water Board's independent management, financing, and operations, ultimately concluding that it was a juridical person capable of being sued. See id. at 352. In addition to a number of other factors, the court noted the Sewerage and Water Board's independent source of revenues, direction and control of its work force (via the ability to hire and fire), and the fact that it established a pension fund for its employees and made rules and regulations governing employees' pensions. See id. at 347-48, 352.

In contrast, in City Council of Lafayette v. Bowen, 94-584 (La. App. 3 Cir. 11/2/94), 649 So. 2d 611, 613, the court held that the City Council of Lafayette had no capacity to sue or be sued, as there was "no authority, constitutional, statutory, or via home rule charter that authorizes the Lafayette City Council to institute of its own motion, a lawsuit." In the wake of Roberts and Bowen, courts seem to hold uniformly that sheriff's departments and police departments are not juridical entities capable of being sued, see Cozzo v. Tangipahoa Parish Council-President Gov't, 279 F.3d 273, 283 (5th Cir. 2002); Parnell v. Jefferson Parish Sheriff's Office, 2010 WL 1817814, *2 n.1 (E.D. La. Mar. 31, 2010)(collecting cases), nor are parish jail facilities. See Jones v. St. Tammany Parish Jail, 4 F. Supp. 2d 606, 613 (E.D. La. 1998); see also Darby, 939 F.2d at 313 ("our cases uniformly show that unless the true political

entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself."); Harris v. City of Hammond, 2008 WL 4469112 (E.D. La. Sept. 30, 2008)(holding that the Louisiana Attorney General's Internet Crimes Against Children Task Force did not have legal capacity to function independently and thus was not a juridical entity that could be sued); and Angers v. Lafayette Consol. Gov't, 2007 WL 2908805 (W.D. La. Oct. 3, 2007)(holding that animal shelter was not a juridical entity capable of being sued).

In the instant case, it is undisputed[1] that Metro Narcotics is a task force comprised of law enforcement officers from the Ouachita Parish Sheriff's Office, Monroe Police Department, West Monroe Police Department, and Louisiana State Police. The United States Government also contributes two Drug Enforcement Administration agents to work with Metro Narcotics. Metro Narcotics' purpose is to investigate drug crimes and enforce state and federal drug laws in Ouachita Parish and surrounding areas. Metro Narcotics' "general direction and policies" are determined by a group of people, made up of the Ouachita Parish Sheriff, the Monroe Chief of Police, the West Monroe Chief of Police, and the District Attorney

---

[1] The following facts are derived primarily from Metro Narcotics' statement of undisputed facts, which facts were largely uncontroverted by Sipes. Accordingly, any fact not controverted is deemed admitted.

of the Fourth Judicial District Court. This group meets on an informal basis. They are responsible for selecting a commander, who oversees the daily activities of Metro Narcotics. All officers assigned to work with Metro Narcotics are both employed and paid by their respective agencies and remain under the direct control of those agencies.

Metro Narcotics obtains funding from various grants, including grants applied for by the City of West Monroe and grants provided by the Office of National Drug Policy, High Intensity Drug Trafficking Area. These grants are "subject to final review and approval as to the allowability of expenditures by the grantor agency." Record Document 9-1, p. 20. Metro Narcotics also receives revenue from the seizure and forfeiture of drug-related assets. Because Metro Narcotics "handle[s] public funds, an annual financial audit is filed by the Unit . . . ." Record Document 9-2, p. 1, ¶ 5. Although older audit reports contained language reflecting that Metro Narcotics had commercial insurance to cover its risks, in fact, this information was incorrect and was deleted from later audit reports. Larry LaBorde, who was the Metro Narcotics commander from 1983 until 2003, submitted an affidavit in which he represented that it was his decision to have audits conducted "solely to document how funds were being spent, and because some of the sources for the federal grants required such an audit." Record Document 14-1,

p. 2, ¶ 7. He further stated that Metro Narcotics never purchased liability insurance, as "the people who were assigned to the task force were paid by and under the ultimate control of the various participating agencies, and were covered by their employer's risk management systems." Id. at ¶ 8. In addition, as to the personnel assigned to Metro Narcotics, LaBorde stated that not only are the officers assigned to it employed and paid by their respective agencies, they can be "pull[ed] or re-assign[ed]" by their agencies at any time. Id. at ¶ 4. The affidavit of Jay Ellerman ("Ellerman"), the current commander of Metro Narcotics, confirms this. See Record Document 9-1, p. 2, ¶ 5.

Applying a Roberts analysis to the facts of this case, the Court concludes that Metro Narcotics is not a juridical entity capable of being sued. The primary inquiry is whether it is an independent entity, separate and distinct from other governmental entities, or whether it functions as an agency or division of other governmental entities. Here, it is clear that Metro Narcotics functions at the behest, direction, and control of other governmental agencies. That is, it is a law enforcement unit comprised of employees assigned by four local law enforcement agencies and is wholly dependent on those agencies for its continued existence. While Metro Narcotics has a specialized purpose (to enforce drug laws), that purpose is merely an extension of the purpose of the agencies comprising it, rather

than a unique enterprise handled exclusively by this law enforcement group. The officers who work with Metro Narcotics are not employed by it, but rather are on loan from their own agencies. They can be reassigned at the pleasure of their own agency. Indeed, based on the materials submitted to the Court, Metro Narcotics has no ability to hire, fire, or promote employees. Metro Narcotics does not pay personnel; rather, officers are paid by their respective agencies. Metro Narcotics does not maintain insurance; rather, insurance is carried by each individual agency. Metro Narcotics does not generate its own funding; rather, it receives grant money from other governmental agencies and obtains some funding through the seizure and forfeiture of drug-related proceeds and/or assets.

      As in Bowen, there is no authority, constitutional, statutory, local ordinance, or otherwise that created Metro Narcotics as a juridical entity or gave it the power to sue or be sued. Metro Narcotics operates under the direction and supervision of the heads of the agencies comprising it and is not separate or distinct from those agencies, either in terms of funding, operations, or employment decisions. Plainly, then, Metro Narcotics cannot function independently of the agencies comprising it, but rather is fully dependent on them in almost every significant aspect. Considering the foregoing, the Court holds that Metro Narcotics is not a juridical entity capable of being sued.

In reaching this conclusion, the Court notes that Sipes has cited no law that grants Metro Narcotics the legal capacity to function independently, rather than as a division of the other governmental entities. Furthermore, his argument in defense of summary judgment relies exclusively on a Standard Operating Procedure manual (the "Manual") produced in discovery, as well as the audits performed on Metro Narcotics. Although the Manual indicates that Metro Narcotics has a Chairman of the Board and a Board of Directors who have authority over the commander, the record is devoid of any evidence showing the Manual was even in force at the relevant time. In fact, Ellerman's affidavit reflects that the Manual was "found in a filing cabinet in the office, but to affiant's knowledge, this document was likely drafted in the early 1980's and has not been used or adhered to by [Metro Narcotics] for many years." Record Document 9-1, p. 2, ¶ 6. There is no evidence as to who drafted the Manual, whether and/or when it became effective, and if so, for how long. Moreover, despite being given a number of months to conduct discovery, Sipes has failed to produce any evidence indicating that there is, in fact, a Board of Directors or a Chairman of the Board, or what the respective duties and obligations of those positions would be. In short, the Manual is insufficient to demonstrate that Metro Narcotics is a juridical entity.

Furthermore, the Court notes that information contained in the Manual also cuts against Sipes' position, in that it includes information that would indicate that Metro Narcotics **is not** a juridical entity. Indeed, there are provisions stating that: each agency must supply insurance for its officer's vehicle; Metro Narcotics' expenses are to be shared by the agencies comprising it; and when disciplinary action is necessary, the problem is to be reported to the officer's respective agency for appropriate action. See Record Document 9-1, pp. 27-44.

As previously mentioned, Sipes also unsuccessfully relies on Metro Narcotics' financial audit reports, claiming that these reports demonstrate the intent for Metro Narcotics to constitute a distinct unit. In so arguing, Sipes points to audit provisions which indicate that Metro Narcotics obtained insurance coverage, that Metro Narcotics holds funds in its own name and makes expenditures, and that the audit opinion letters are addressed to the Board of Directors. With respect to insurance coverage, as discussed above, Metro Narcotics has provided sufficient summary judgment evidence establishing that it never had insurance coverage and that the audit language stating to the contrary was in error. Sipes has not contradicted this evidence. The other audit information that Sipes highlights -- that Metro Narcotics holds and spends money and that the audit letters were addressed to the Board of

Directors-- is insufficient to prove that Metro Narcotics is a juridical entity under the Roberts analysis.[2]

In addition to his reliance on the Manual and audit reports, Sipes' opposition to the motion for summary judgment simply cites to a number of other Louisiana statutes in a failed attempt to prove that Metro Narcotics is capable of being sued.[3] By merely quoting the language of these statutes, with no legal analysis whatsoever, Sipes wholly fails to demonstrate the relevance or applicability of these provisions to the facts of this case. Such conclusory and unsupported arguments are insufficient to defeat summary judgment.

Finally, Sipes concludes his opposition with an ultimatum for Metro Narcotics: it must either acknowledge that it is a "governmental entity or acknowledg[e] that it is engaged in potential donations of public funds" in violation of the Louisiana Constitution. Record Document 11-1, p. 6. Clearly, this is an inappropriate argument to defeat summary judgment. Moreover, because the issue of donation of public funds is not properly before the Court, it will not be considered.

---

[2] The Court points out that not only are the facts insufficient to prove that Metro Narcotics is a juridical entity under Roberts, Sipes did not even attempt to analyze this case under the Roberts guidelines.

[3] Sipes cites to La. R.S. 12:501 (unincorporated associations), La. R.S. 33:1321 (intergovernmental agencies); and La. R.S. 33:1329 (commission under Local Services law).

In short, in defending this motion, Sipes has provided the Court with no jurisprudence to support any of its contentions, nor has it offered any exhibits, affidavits or other competent summary judgment evidence to show that, under a Roberts analysis, Metro Narcotics is a juridical entity. Therefore, Sipes is not entitled to any relief against Metro Narcotics.

Accordingly, based on the undisputed facts, the evidence before the Court, and the applicable law, the Court finds that there are no genuine issues of material fact precluding summary judgment in favor of Metro Narcotics.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Metro Narcotics' motion for summary judgment [Record Document 9] be and is hereby **GRANTED** and the claim against Metro Narcotics is dismissed with prejudice. .

**THUS DONE AND SIGNED** on this 28th day of March, 2013.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE