**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| STEPHEN SIPES | CIVIL ACTION NO. 11-CV-01668 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| CITY OF MONROE, METRO NARCOTICS UNIT, AND TRICHE L. PASSMAN IN HIS INDIVIDUAL CAPACITY | MAGISTRATE JUDGE MARK L. HORNSBY |

**MEMORANDUM RULING**

Plaintiff, Stephen Sipes, Jr., filed this Section 1983 suit against the City of Monroe, the Metro Narcotics Unit, and Officer Triche Passman ("Passman"), asserting that he was falsely arrested, subjected to unlawful search and seizure, and maliciously prosecuted. The Court has previously dismissed Plaintiff's claims against the Metro Narcotics Unit. [Record Document 23]. Before the Court is a motion for summary judgment filed by Defendants seeking dismissal of Plaintiff's claims that he was twice detained in violation of the Fourth Amendment of the United States Constitution, as well as his parallel state claims. For the following reasons, the Court **GRANTS** Defendants' motion.

**I.    FACTUAL BACKGROUND**

The following facts are culled from the Defendants' statement of uncontested material facts and from the recitation of facts given by Plaintiff in his opposition to the

instant motion.[1] In September 2010, Plaintiff was collecting money from Monroe and Shreveport businesses, purportedly for advertising in "Louisiana Narcotics Officer" magazine. Plaintiff contends that he was hired by Bill Fielder of Callan Publishing, the company responsible for publishing "Louisiana Narcotics Officer." On September 15, 2010, Plaintiff attempted to pick up a check from the office of Dr. Karen L. Koehler, DDS in Monroe. Metro Narcotics officer Hank Smith had earlier received a phone call from Dr. Koehler reporting a suspicious call from someone who identified himself as "Mark Davis." Dr. Koehler explained to Officer Smith that someone named Mark Davis who claimed to be from Metro Narcotics had called her office and stated that she was "not in any trouble." [Record Document 25-2, p.5]. The caller was seeking subscriptions for ads in the "Louisiana Narcotics Officer" magazine and quoted a price of $300.00. When Dr. Koehler balked at the price, the caller lowered it to $150 and said she could call it a donation. Dr. Koehler agreed, and the caller said he would return on the 15th of September at 11:00 a.m. to pick up the check. On the 15th of September, Officer Smith dispatched Officers Passman and Jones to intercept the caller.

When no-one came to collect the check at 11:00 a.m., Officers Passman and Jones left Dr. Koehler's office. They soon received a call from Dr. Kohler's office manager, Terrina Rogers, who told them that a man in the lobby was there to pick up a check. The officers returned and confronted the Plaintiff. They asked him whether his name was Mark Davis; he replied that he was Stephen Sipes. They asked him why he was there; he responded

---

[1] Defendants' statement of uncontested material facts is disputed only with respect to immaterial points.

that someone had called and told him to pick up a check. Officer Passman asked Plaintiff for identification. Plaintiff explained that he did not have any identification on him. Officer Passman then handcuffed him and led him outside.

Once outside, Plaintiff told Officer Passman that his identification was in his truck. The truck was approximately thirty to forty feet away from where the officers and Plaintiff were standing. Plaintiff gave Officer Passman permission to get the ID but not to search the truck. Officer Passman retrieved the ID from the truck, along with an number of checks from various doctors and dentists and a handwritten list of names and telephone numbers that corresponded to the names on the checks. Plaintiff denied that he had been calling dentist offices claiming to be Mark Davis from the Metro Narcotics Unit and soliciting money. He said he was working for someone named Billy Fielder from Farmington, Missouri. To verify his story, he asked Officer Passman to call Mr. Fielder. Officer Passman called Mr. Fielder from Plaintiff's phone. Mr. Fielder explained that he had a contract with a publishing company and that he was indeed selling ads for the Louisiana Narcotics Officers Association. He confirmed that he had hired Sipes as a courier. He also stated that he required his couriers to never identify themselves as law enforcement and to wear a uniform that displayed their name and their company name. Plaintiff was wearing no uniform. Mr. Fielder said that he allowed couriers to "also make phone calls." [Record Document 25-2, p.30].  Officer Passman then allowed Sipes to leave.

Although in his deposition Plaintiff states that the detention took about an hour and a half or "a long time," Plaintiff has since backed off from those statement. [Record

Document 25-2, p. 13]. In his opposition to this motion, Plaintiff recites as fact Officer Passman's recollection that the entire encounter took between twenty and thirty minutes. [Record Document 31-1, p.5]. Ms. Rogers remembers the incident taking about the same amount of time. [Record Document 25-2, p.63]. Accordingly, the Court finds it undisputed that the detention took between twenty and thirty minutes.

Later that day, Officer Passman was informed by Ms. Rogers that when Plaintiff entered the officer, he identified himself as being from Metro Narcotics.[2] Upon learning this information, Officer Passman had Plaintiff, who was driving home to Shreveport, stopped on I-20 and brought back to Ouachita Parish, where he was booked overnight. He was released on bond the next day. He was formally charged with impersonating a law enforcement officer by a bill of information, although those charges were dismissed in November 2011. In September 2011, Plaintiff filed suit against the City of Monroe, Metro Narcotics, and Officer Passman, claiming false arrest, unlawful search and seizure, malicious prosecution, and intentional infliction of emotional distress.

## II.   Applicable Law

Before proceeding any further, it is essential to determine exactly which of Plaintiff's claims are the target of Defendants' motion. Read liberally, Plaintiff's asserts §

---

[2] The parties dispute exactly when and how Officer Passman was informed. They also dispute whether Plaintiff actually identified himself as being with the Metro Narcotics Unit. These disputes are immaterial, however, as it is undisputed that between the first seizure of Plaintiff and his subsequent arrest, Officer Passman was informed that Plaintiff had identified himself as being with the Metro Narcotics Unit. Exactly when Officer Passman learned this information is irrelevant to the question of what he knew at the time of the second arrest.

1983 claims for the seizure of his person at the doctor's office, the search of his truck at the doctor's office, his subsequent arrest while driving home on I-20, and for prosecution without probable cause. Plaintiff also asserts parallel state law claims for malicious prosecution, false arrest, and intentional infliction of emotional distress. While the present motion for summary judgment touches briefly on the portions of the search of the truck to which Plaintiff did not consent, no argument is devoted to Plaintiff's claim that parts of the search of his truck were unconstitutional.[3] Defendants do not discuss whether the search of Plaintiff's truck exceeded the reasonable scope of the investigatory stop or was otherwise an appropriate warrantless search. Rather, the motion appears to be directed only at Plaintiff's claims that the first seizure at the doctor's office, the second arrest while driving home, and the prosecution were unlawful. Accordingly, the Court expresses no opinion on the merits of Plaintiff's claim that his truck was unlawfully searched.

---

[3] See [Record Document 25-1, p. 3] ("Mr. Sipes told the officers his wallet was on the dashboard of the car and he gave them permission to get the wallet for identification. The officers subsequently retrieved... a file containing checks Mr. Sipes had picked up from offices in the Monroe area which, in reading Mr. Sipes [sic] own deposition at some point he would not have kept from the officers."); [Record Document 25-1, p.5] ("Officer Passman asked Mr. Sipes if he could search his vehicle and Mr. Sipes said 'No.' Thereafter Officer Passman went back inside the truck and retrieved a folder out of Mr. Sipes' truck containing checks Mr. Sipes had picked up along with information on his courier company. By Mr. Sipes' own admission there was conversation concerning the folder and Mr. Sipes admits he would not have kept that from Officer Passman as it would disclose something showing that he (Mr. Sipes) was telling the truth. Mr. Sipes did not keep him (Officer Passman) from looking at the evidence...").

**A.      Motion for Summary Judgment.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rule of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". Fed. R. Civ. P. 56(a).  The materiality of facts is determined by the substantive law's identification of which facts are critical and which facts are irrelevant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  A genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.  "Factual disputes that are irrelevant or unnecessary will not be counted." Id.

Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). While the nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence, all factual

controversies must be resolved in favor of the nonmovant. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047; see also Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005). A factual controversy only exists when "both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

### B.     Qualified Immunity.

The doctrine of qualified immunity shields government officials from liability for claims brought against them in their individual capacity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The doctrine is designed to shield government officials from harassment, distraction, and liability when they perform their duties reasonably, and it applies regardless of whether the official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 129 (2009) (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). Because qualified immunity is "an immunity

from suit rather than a mere defense to liability... it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). Consequently, qualified immunity questions should be resolved at the earliest possible stage in litigation. Hunter v. Bryant, 502 U.S. 224, 227(1991) (per curiam). Personal immunity defenses, such as qualified immunity, may not be asserted by a municipality. Kentucky v. Graham, 473 U.S. 159, 167 (1985).

If a government official sued in his individual capacity asserts a qualified immunity defense, the burden is on the plaintiff to demonstrate the inapplicability of the defense. McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002). Nevertheless, all inferences must still be drawn in the plaintiff's favor. Brown v. Callahan, 623 F.3d 249, 253 (5th Cir. 2010). The defense has two prongs. The plaintiff must show: (1) that the official's conduct did not violate a constitutional right; and (2) that the official's conduct was not objectively reasonable in light of the law that was clearly established at the time of the violation. Terry v. Hubert, 609 F.3d 757, 761 (5th Cir. 2010).[4] "The touchstone of [the second prong] is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the

---

[4]In Pearson, the Supreme Court held that while this order of analysis is often appropriate, it is not mandatory. 555 U.S. at 224. Instead, lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. In this matter, the Court finds it appropriate to follow the established sequence and determine first whether the facts alleged show the officers' conduct violated a constitutional right. Deciding the constitutional issue at the outset presents a more straightforward analysis and "promotes clarify in the legal standards for official conduct, to the benefit of both the officers and the general public." See Wilson v. Layne, 526 U.S. 603, 609 (1999).

clearly established law." Goodson v. Corpus Christi, 202 F.3d 730, 736 (5th Cir. 2000). Whether an official's conduct was objectively reasonable is a question of law to be decided by the Court. Evett v. DETNTFF, 330 F.3d 681, 687 (5th Cir. 2003).

### C. Legality of Investigatory Stops and Arrests under the Fourth Amendment

While the Fourth Amendment applies to all seizures regardless of whether they rise to the level of an arrest, a reasonable investigatory stop, understood was a brief detention for questioning and to determine if the suspect is dangerous, is constitutional. United States v. Brignoni-Ponce, 422 U.S. 873, 879-81 (1975). "[T]he legality of police investigatory stops is tested in two parts. Courts first examine whether the officer's action was justified at its inception, and then inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." United States v. Brigham, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). An investigatory stop is justified at its inception if the officer has a reasonable suspicion that criminal activity is underfoot. United States v. Michelletti, 13 F.3d 838, 840 (5th Cir. 1994) (en banc). "The Fourth Amendment requires only some minimum level of objective justification for the officers' actions—but more than a hunch—measured in light of the totality of the circumstances." Id. Reasonable suspicion must be supported by particular and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant an intrusion. Davila v. United States., 713 F.3d 248, 258 (5th Cir. 2013). "In assessing whether a detention is too long in duration to be justified as an investigative stop, [courts must] examine whether the police diligently pursued a means of investigation that was

likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." United States v. Sharpe, 470 U.S. 675, 686 (1985). The ultimate question of whether the facts "add up to establish an appropriate level of reasonable articulable suspicion of criminality or danger is a question of law..." United States v. Scroggins, 599 F.3d 433, 441 (5th Cir. 2010).

An arrest, on the other hand, must be supported by probable cause. Terry v. Ohio, 392 U.S. 1, 20 (1968). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." Resendiz v. Miller, 203 F.3d 902, 903 (5th Cir. 2000). False arrest and malicious prosecution claims premised on a lack of probable cause turn on the validity of the arrest. Cormier v. Lafayette City-Parish Cosol. Gov't, 493 Fed. Appx. 578, 583-84 (5th Cir. 2012) (unpublished) (citing Wells v. Bonner, 45 F.3d 90, 95 (5th Cir. 1995)). Thus, if there was probable cause for the arrest, both types of claims fail. Id. Whether probable cause exists, given a set of undisputed material facts, is a question of law. Blackwell v. Barton, 34 F.3d 298, 305 (5th Cir. 1994).

### III. Analysis

#### A. Federal Claims

While the Plaintiff contends in a conclusory manner that his initial seizure at Dr. Koehler's office was an arrest, he provides no authority for this argument. Accordingly, as the Plaintiff bears the burden of disproving the qualified immunity defense, the Court will

analyze this first seizure as an investigatory stop and the second seizure as an arrest.[5] Drawing all reasonable inferences in Plaintiff's favor, the Court finds that Officer Passman's detention of the Plaintiff at Dr. Keohler's office was a reasonable investigatory stop. Officer Passman knew that someone who had previously claimed to be from the Metro Narcotics Unit and was named Mark Davis was coming to pick up a check. It was reasonable for Officer Passman to interpret the caller's assurance that Dr. Koehler was "not in trouble" as an attempt by the caller to project the authority of a law enforcement officer. When a man appeared close to the appointed time to pick up a check and claimed not to be Mark Davis, but did not have ID, a reasonable officer would have sought to investigate further in order to determine whether this man was attempting to impersonate a police officer. That the man who arrived appeared to be doing exactly what the caller had said he would do elevates Officer Passman's suspicion above the level of an unsupported hunch. There is no question that the circumstances of the phone call and Plaintiff's arrival at the doctor's office are articulable and particular facts. Neither is there any question that Officer Passman's suspicion that the caller was attempting to take on the authority of a police officer and that the person who arrived at the office at the appointed time were one and the same person was at least reasonable.

Regarding the second prong of the investigative stop analysis, Plaintiff has failed to point to any facts indicating that the detention took any longer than necessary or that the police failed to diligently pursue a means of investigation that would either confirm or

---

[5]In any case, the Court is satisfied that the investigation, questioning, and subsequent release of the Plaintiff while at the doctor's office was not a formal arrest.

dispel their suspicions quickly. Officer Passman immediately checked Plaintiff's ID. The detention was prolonged by Plaintiff's request that Officer Passman call his employer to confirm his identity. Further inquires regarding Plaintiff's identity were reasonable given the close fit between Plaintiff's actions and what the caller had said he was going to do. The identity of Mark Davis remained elusive even after Plaintiff's ID confirmed that he was in fact Stephen Sipes. It appears that neither the Plaintiff nor Mr. Fielder provided any information regarding who "Mark Davis" was. After he had exhausted what he could learn from Plaintiff, Officer Passman released him. None of these actions by Officer Passman are unreasonable, and Plaintiff has not pointed to any other actions that prolonged his detention any longer than necessary.

Regarding the second seizure, it is undisputed that at the time of arrest Officer Passman had been informed that Plaintiff told Ms. Rogers that he was with Metro Narcotics. Plaintiff makes two arguments for why, given the statute in question, this fact is irrelevant to the probable cause inquiry. The pertinent portions of the statute creating the crime with which Plaintiff was charged are as follows:

§ 112.1. False personation of a peace officer or firefighter

A. False personation of a peace officer or firefighter is the performance of any one or more of the following acts with the intent to injure or defraud or to obtain or secure any special privilege or advantage:

> ...
>
> (1) Impersonating any peace officer or firefighter or assuming, without authority, any uniform or badge by which a peace officer or firefighter is lawfully distinguished.

> > (2) Performing any act purporting to be official in such assumed character.
> > ...
>
> B. As used in this Section:
>
> > ...
> >
> > (3) "Peace officer" shall include commissioned police officers, sheriffs, deputy sheriffs, marshals, deputy marshals, correctional officers, constables, wildlife enforcement agents, park wardens, livestock brand inspectors, forestry officers, military police, fire marshal investigators, probation and parole officers, attorney general investigators, and district attorney investigators.
>
> La. Rev. Stat. Ann. § 14:112.1 (2013).

Plaintiff first argues that because at the time of the second arrest Officer Passman knew that Plaintiff was a courier picking up checks for a third party, it was unreasonable for Officer Passman to suspect that he had the requisite intent to "injure or defraud or to obtain or secure any special privilege or advantage." Id. The Court fails to see how the fact that the checks were made out to a third party negates an intent to defraud. Regardless of whether Plaintiff was the recipient of the checks or was merely paid by the recipient of the checks, it was reasonable for Officer Passman to conclude that he intended to obtain the checks by holding himself out to be a Metro Narcotics officer. To whom the checks were made out is irrelevant to how Plaintiff attempted to obtain them. An intent to fraudulently part someone from their money is sufficient to meet the statutory requirement.

Plaintiff's second argument is that it was unreasonable for Officer Passman to conclude that by holding himself out as being with the Metro Narcotics Unit, Plaintiff was impersonating a "peace officer," as defined by the statute:

> "Peace officer" shall include commissioned police officers, sheriffs, deputy sheriffs, marshals, deputy marshals, correctional officers, constables, wildlife enforcement agents, park wardens, livestock brand inspectors, forestry officers, military police, fire marshal investigators, probation and parole officers, attorney general investigators, and district attorney investigators.
>
> La. Rev. Stat. Ann. § 14:112.1(B)(3) (2013).

While Plaintiff acknowledges that Metro Narcotics includes commissioned law enforcement officers, he points out that it also has civilian members. He argues that his statement that he was "with Metro Narcotics" and was there to pick up a check is therefore "legally indistinguishable from a secretary from a municipal police department going to the crime lab, clerk of court, or prosecutor's office and saying, 'I am from the ____ police department.'" [Record Document 31-1, p.8]. While it is true that Plaintiff's statement, considered solely on its own, could conceivably be interpreted as him holding himself out to be a civilian, the essential question for the probable cause analysis is whether the totality of the circumstances at the time of arrest were sufficient for a reasonable officer in Officer Passman's position to conclude that Plaintiff had committed the crime. <u>Resendiz v. Miller</u>, 203 F.3d 902, 903 (5th Cir. 2000). Officer Passman knew that the caller had said he was going to pick up the check, that the caller had assured Dr. Koehler that she was not in any trouble, that Plaintiff had showed up to pick up the check just as the caller said he would, that Mr. Fielder allowed his couriers to make their own calls, and that in common parlance the term "Metro Narcotics Unit" evokes a collection of law enforcement officers. The Court is convinced that given these circumstances, there can be no doubt that it was at least reasonable for Officer Passman to conclude that Plaintiff was holding himself out

to be a police officer under secton A(1) of the statute. La. Rev. Stat. Ann. § 14:112.1 A(1) (2013). Officer Passman therefore had probable cause to arrest Plaintiff.[6]

Accordingly, Plaintiff fails the first prong of the qualified immunity analysis for both seizures. As Plaintiff has not made out a constitutional violation, Officer Passman is entitled to qualified immunity on Plaintiff's unconstitutional seizure, false arrest, and malicious prosecution claims. Although the City of Monroe does not enjoy qualified immunity, they are similarly entitled to summary judgment the same claims because the Court has found as a matter of law that on the undisputed facts the Constitution was not violated.

### B.   State Law Claims

Plaintiff has also brought state law claims against Officer Passman and the City of Monroe for false arrest, malicious prosecution, and intentional infliction of emotional distress. A claim for malicious prosecution under Louisiana law requires that the plaintiff prove: "(1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff." Kennedy v. Sheriff of East Baton Rouge, 935 So.2d 669, 690 n.20 (La. 2006). The crux of the probable cause inquiry in a malicious prosecution case is whether the person filing the charges lacked an "honest and reasonable belief in

---

[6]Having found there was probable cause to conclude that Plaintiff violated (A)(1) of the statute, the Court need not address Plaintiff's argument that he could not have violated (A)(2) because he did not perform any act of a police officer. La. Rev. Stat. Ann. § 14:112.1 A(1)-(2) (2013).

the [defendant's] guilt" at the time charges were filed. Jones v. Soileau, 448 So.2d 1268, 1272 (La. 1984). One bringing a claim for false arrest under Louisiana law must prove: "(1) detention of the person; and (2) the unlawfulness of the detention." Richard v. Richard, 74 So.3d 1156, 1159 (La. 2011).

Plaintiff's malicious prosecution claim under Louisiana law can not be maintained for the reasons given above in connection with the federal actions premised on a lack of probable cause. Having found that Officer Passman acted reasonably with regard to Plaintiff's arrest, the Court is convinced that Plaintiff has failed to produce any evidence that Officer Passman did not have an "honest and reasonable belief in the [defendant's] guilt." Jones, 448 So.2d at 1272. Similarly, the state claim for false arrest must fail for the reasons given above, Plaintiff having failed to point to any evidence that would rebut Defendants' argument that on the undisputed facts his detentions were lawful under Louisiana law. Similarly Plaintiff has failed to point to any evidence to support his intentional infliction of emotional distress claim. See Cormier, 493 Fed.Appx. 578, 584 n.7 (2012) (unpublished) (citing White v. Monsanto Co., 585 So.2d 1205 (La. 1991)).

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Defendants' Motion for Summary Judgment [Record Document 25] is **GRANTED**. All of Plaintiff's claims, with the exception of his claim that the search of his truck during his first seizure was unconstitutional, are hereby **DISMISSED WITH PREJUDICE**.

      **THUS DONE AND SIGNED** in Shreveport, Louisiana on this 15th day of August, 2013.

*[signature]*

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE